IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>vs.<br><br>JEFERSON GERMAN MEDINA<br><br>          Defendant. | No. 3:25-mj-00731-KFR |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Phillip York, having been first duly sworn, do hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I am a Special Agent with the Federal Bureau of Investigation.

2.     I make this affidavit in support of an application for a criminal complaint and arrest warrant pursuant to Federal Rules of Criminal Procedure 3 and 4. As explained more fully below, I have probable cause to believe that JEFERSON GERMAN MEDINA (the SUBJECT) has committed the following federal criminal offenses: Distribution of a Controlled Substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) and (C).

3.     I have been a Special Agent with the Federal Bureau of Investigation (FBI) since August 2023 when I attended New Agent's Training in Quantico, Virginia. Following my graduation from New Agent's Training, I was assigned to the Anchorage FBI Field Office on the Counterintelligence squad and now serve on the Violent Crimes squad. As part of my FBI duties, I investigate criminal violations of federal law, to include federal sex

Nov 13, 2025

trafficking and prostitution offenses, racketeering offenses, and the Controlled Substances Act. Throughout my law enforcement career, I have received training in the enforcement of federal law. My training and experience have involved, among other things: (1) the debriefing of defendants, witnesses, and informants, as well as others who have knowledge of the criminal activity and of the laundering and concealment of proceeds of criminal activity; (2) surveillance; (3) analysis of documentary and physical evidence; and (4) the execution of search warrants. I have assisted in the investigation of narcotics cases ranging in scope from street level distributors to multi-state international complex conspiracy cases to include, drug related matters, local and national gang investigations, and violent crimes against children. Prior to becoming a Special Agent, I served as a Marine Corps Intelligence Officer where I conducted production and analysis on regional national security threats.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. Because the affidavit is intended to establish probable cause to support a complaint and secure an arrest warrant, I have not included each and every fact known to me concerning this investigation.

**FACTS ESTABLISHING PROBABLE CAUSE**

5. The United States, through your Affiant, along with other state, local, and federal law enforcement officers, are investigating a drug trafficker operating in Anchorage, Alaska known as JEFERSON GERMAN MEDINA (SUBJECT) and his associates regarding possible violations of 21 U.S.C. § 841(a)(1). The investigation

Nov 13, 2025

*Affidavit in Support of Criminal Complaint*
3:25-mj-00731-KFR  Page 2 of 11
Case 3:25-mj-00731-KFR   Document 2   Filed 11/13/25   Page 2 of 11

believes SUBJECT and his associates are involved in distributing large quantities of various controlled substances, including cocaine and methamphetamine into and within the State of Alaska. The following information is based on my own knowledge, from other law enforcement agents and officers, or from specific sources as set forth, it does not represent every fact, only the most significant facts of this investigation thus far.

6. During the month of May 2025, the Anchorage High Intensity Drug Trafficking Area (HIDTA) squad comprised primarily of federally deputized task force officers from Anchorage Police Department (APD) and agents from the Federal Bureau of Investigation (FBI), Homeland Security Investigations (HSI) and Drug Enforcement Administration (DEA), with the assistance of other local and federal law enforcement partners, conducted a controlled purchase of controlled substances from the SUBJECT. In this operation, on May 9, 2025, a Confidential Human Source (CHS), under the direction of investigators, met with SUBJECT during an audio/video recorded and physically surveilled meeting in Anchorage, Alaska. The CHS communicated with SUBJECT using the WhatsApp application and to arrange a meeting for the purpose of buying drugs. SUBJECT primarily communicates in Spanish with the CHS. Prior to the meeting, investigators searched both the CHS and the CHS's vehicle for any contraband. Upon completion of the search, investigators were able to confidently confirm the CHS did not have any drugs or contraband on their person or in their vehicle. The CHS was equipped with an audio and video recording device. Investigators gave the CHS $1,300 in pre-recorded funds to purchase drugs and then followed the CHS and their vehicle to a business, Costco, located at 4125 DeBarr Rd, Anchorage, Alaska 99508. After the CHS parked, SUBJECT arrived

*Affidavit in Support of Criminal Complaint*
3:25-mj-00731-KFR                Page 3 of 11

Nov 13, 2025

Case 3:25-mj-00731-KFR    Document 2    Filed 11/13/25    Page 3 of 11

in the Costco parking lot driving a 2015 Ford Explorer bearing Alaska license plate LMM183 (SUBJECT VEHICLE 1) and parked. The CHS exited their vehicle and entered SUBJECT VEHICLE 1 through the front passenger side door. The CHS paid SUBJECT $1,300 for what was believed to be one ounce of cocaine. The CHS exited SUBJECT VEHICLE 1 and returned to the CHS vehicle. SUBJECT departed the Costco parking lot as the sole occupant and driver of SUBJECT VEHICLE 1. Following the operation, the CHS met with law enforcement at a predetermined location where the CHS turned over the drug evidence and recording equipment. Investigators then searched the CHS again for drugs or contraband, which yielded a negative result. The suspected drug evidence was transported to the FBI Anchorage drug evidence vault for storage. The drug evidence was weighed in its original packaging which showed a net weight of 29.3 grams. The drug evidence was entered into FBI evidence and then submitted to DEA Laboratory for testing. The drug evidence tested positive following DEA Laboratory testing for 28 grams of Cocaine Hydrochloride with a substance purity of 92 percent.

7.   An Alaska DMV driver's license photo of SUBJECT matched the imagery obtained of the SUBJECT from the covert recording device footage. Surveillance after the May 9, 2025, controlled purchase showed that the SUBJECT returned to the residence associated with SUBJECT's Alaska DMV database: 4200 E 4th Ave, SPC 193, Anchorage, AK 99508.

Nov 13, 2025

//

//

8. On May 22, 2025, an additional controlled purchase of drug evidence was coordinated with SUBJECT. In this operation, the CHS, under the direction of investigators, met with the SUBJECT during an audio/video recorded and physically surveilled meeting in Anchorage, Alaska. The CHS communicated with SUBJECT using the WhatsApp application and requested to meet them for the purpose of buying drugs. Prior to the meeting, the CHS and CHS vehicle were searched for any contraband. Upon completion of the search, investigators were able to confidently confirm the CHS did not have any drugs or contraband on their person or in their vehicle. The CHS was equipped with an audio and video recording device. The CHS was given $5,500 in pre-recorded funds to purchase drugs and investigators followed them and their vehicle to a location in the vicinity of 4539 E 7th, Anchorage, Alaska 99504. After the CHS arrived at the location, SUBJECT arrived in the parking lot of 4539 E 7th Ave, Anchorage, AK, in a 2017 Ford Edge bearing Alaska license plate KKJ395 (SUBJECT VEHICLE 2), and parked. The CHS exited their vehicle and entered SUBJECT VEHICLE 2 through the front passenger side door. Investigators observed SUBJECT and CHS departing in SUBJECT VEHICLE 2, driving within the neighborhood near 4539 E 7th Ave, Anchorage, AK, and then returning to the parking lot of 4539 E 7th Ave, Anchorage, AK without having made any stops. The CHS paid the SUBJECT $5,500 for what was believed to be one kilogram of methamphetamine. The CHS exited SUBJECT VEHICLE 2 and returned to the CHS vehicle. SUBJECT departed the parking lot as the sole occupant and driver of SUBJECT VEHICLE 2. Following the operation, the CHS met with law enforcement at a predetermined location where the CHS turned over the drug evidence and

recording equipment. The CHS was then searched again for drugs or contraband which yielded a negative result. The suspected drug evidence was transported to the FBI Anchorage drug evidence vault for storage. The drug evidence was weighed in its original packaging which showed a net weight of 474.8 grams. The drug evidence was entered into FBI evidence and then submitted to DEA Laboratory for testing. The drug evidence tested positive in DEA Laboratory testing for 440.3 grams of Methamphetamine with a substance purity of 88 percent.

9. On July 21, 2025, the CHS was questioned by Handling Agents about potential derogatory information related to the purchase of methamphetamine from the SUBJECT for $5,500. WhatsApp messages, voluntarily provided to Handling Agents, between the CHS and SUBJECT contained information presenting a concern that the purchase of methamphetamine was to occur for $4,000. When confronted with this information, the CHS repeatedly denied any wrongdoing, confirmed the exchange of all $5,500 in government funds to the SUBJECT for methamphetamine and agreed to any mitigation or control Handling Agents wished to put in place. Handling Agents agreed to include additional control measures for future operational activity. The CHS and CHS vehicle were searched before and after the audio/video recorded operation and no contraband located. The CHS was also questioned regarding the sale price for CHS's purported buyer. On recording, the CHS could be heard telling the SUBJECT they would sell the methamphetamine to a buyer for $5,500. The CHS informed Handling Agents they meant to imply the methamphetamine would be sold for $5,500 to a buyer in addition to a markup.

//

Nov 13, 2025

10. Prior to this operation, SUBJECT VEHICLE 1 was observed parked in the vicinity of SUBJECT's residence. An Alaska DMV driver's license photo of SUBJECT matched the imagery obtained of SUBJECT from the covert recording device footage. Surveillance after the operation saw SUBJECT return to his residence associated with him in the Alaska DMV database: 4200 E 4th Ave, SPC 193, Anchorage, AK 99508. SUBJECT was then observed departing his residence in SUBJECT VEHICLE 2 and driving to and entering the AK FADEZ Barbershop, located at 9191 Old Seward Hwy STE3, Anchorage, AK 99515.

11. On June 20, 2025, an additional controlled purchase of drug evidence was coordinated by the SUBJECT. In this operation, the TCHS under the direction of investigators, met with the SUBJECT during an audio/video recorded and physically surveilled meeting in Anchorage, Alaska. The CHS communicated with the SUBJECT using the WhatsApp application and requested to meet them for the purpose of buying drugs. Prior to the meeting, the CHS and CHS vehicle were searched for any contraband. Upon completion of the search, investigators were able to confidently confirm the CHS did not have any drugs or contraband on their person or in their vehicle. The CHS was equipped with an audio and video recording device. The CHS was given $2,000 in pre-recorded funds to purchase drugs, was followed under physical surveillance to a location in vicinity of the Gallo's Mexican Restaurant located at 8615 Old Seward Hwy, Anchorage, Alaska 99515 in the CHS vehicle. Prior to meeting with the CHS, physical surveillance identified the SUBJECT and SUBJECT VEHICLE 1 in vicinity of AK FADEZ Barbershop located at 9191 Old Seward Hwy STE3, Anchorage, AK 99515. SUBJECT VEHICLE 2 was

identified as parked at the Key Bank, located at 9041 Old Seward Hwy, Anchorage, AK 99515. This Key Bank is the adjacent parking lot to AK FADEZ. A green Audi with temporary tag T151937 (T151937) was observed in the parking lot in the vicinity of AK FADEZ. SUBJECT was observed entering AK FADEZ. An unidentified male adult (UMA1) exited T151937 and entered AK FADEZ. SUBJECT was observed exiting AK FADEZ and entering the driver side front seat of SUBJECT VEHICLE 1. SUBJECT VEHICLE 1 moved and parked next to T151937. UMA1 then exited AK FADEZ and acquired a brown paper bag from T151937. UMA1 placed the brown paper bag into SUBJECT VEHICLE 1 by opening the front passenger side door of the vehicle. SUBJECT was still seated in SUBJECT VEHICLE 1's driver side seat. UMA1 then entered and departed in T151937. SUBJECT VEHICLE 1 was observed departing AK FADEZ. After the CHS parked in the lot of Gallo's Mexican Restaurant, SUBJECT arrived in SUBJECT VEHICLE 1 and parked. The CHS exited their vehicle and entered SUBJECT VEHICLE 1 through the front passenger side door. The CHS paid the SUBJECT $2,000 for what was believed to be half a pound of methamphetamine in a brown paper bag. The CHS exited SUBJECT VEHICLE 1 and returned to the CHS's vehicle. SUBJECT departed the parking lot as the sole occupant and driver of SUBJECT VEHICLE 1. Following the operation, the CHS met with law enforcement at a predetermined location where the CHS turned over the drug evidence and recording. The CHS was then searched again for drugs or contraband which yielded a negative result. The suspected drug evidence was transported to the Anchorage Police Department at 4501 Elmore Rd, Anchorage, AK, and then to the FBI Anchorage drug evidence vault for



storage. The drug evidence was weighed in its original packaging which showed a net weight of 226.7 grams. The drug evidence was entered into FBI evidence and then submitted to the DEA Laboratory for testing. The drug evidence tested positive in DEA Laboratory testing for 220.6 grams of Methamphetamine with a substance purity of 97 percent.

12. On August 8, 2025, an additional controlled purchase of drug evidence was coordinated by the SUBJECT. In this operation, the CHS under the direction of investigators, met with the SUBJECT during an audio/video recorded and physically surveilled meeting in Anchorage, Alaska. The CHS communicated with the SUBJECT using the WhatsApp application and requested to meet them for the purpose of buying drugs. Prior to the meeting, the CHS and CHS vehicle were searched for any contraband. Upon completion of the search, investigators were able to confidently confirm the CHS did not have any drugs or contraband on their person or in their vehicle. The CHS was equipped an audio and video recording device. The CHS was given $2,000 in pre-recorded funds to purchase drugs, was followed under physical surveillance to a location in vicinity of the Gallo's Mexican Restaurant located at 8615 Old Seward Hwy, Anchorage, Alaska 99515 in the CHS vehicle. Prior to meeting with the CHS, physical surveillance identified the SUBJECT and SUBJECT VEHICLE 1 in vicinity of AK FADEZ Barbershop located at 9191 Old Seward Hwy STE3, Anchorage, AK 99515. The SUBJECT was observed exiting AK FADEZ Barbershop and walking to Gallo's Mexican Restaurant and entering the CHS vehicle. The CHS paid the SUBJECT $1,700 for what was believed to be half a pound of methamphetamine. The CHS moved the CHS vehicle to a nearby location in which the

SUBJECT stored the suspected methamphetamine. The SUBJECT departed the CHS vehicle and exited the parking area on foot after the sale of the suspected methamphetamine was complete. Following the operation, the CHS met with law enforcement at a predetermined location where the CHS turned over the drug evidence and recording. The CHS returned $300 in unspent government funds to investigators. The CHS was then searched again for drugs or contraband which yielded a negative result. The suspected drug evidence was transported to the FBI Anchorage drug evidence vault for storage. The drug evidence was weighed in its original packaging which showed a net weight of 205.7 grams. The drug evidence was entered into FBI evidence and then submitted to the DEA Laboratory for testing. The DEA lab results are pending.

13. On November 10, 2025, federal search warrant 3:25-mj-00689-MMS was conducted for the SUBJECT, SUBJECT VEHICLE 1, SUBJECT VEHICLE 2 and the SUBJECT RESIDENCE. Nothing overtly inculpatory was identified.

14. The SUBJECT has no felony convictions. The SUBJECT criminal history includes an August 19, 2025, conviction for operating under the influence.

15. Information provided by the CHS has been corroborated through recordings and controlled drug purchase operations conducted with the SUBJECT in this investigation, and such information has proven to be truthful. The CHS has one felony conviction. CHS has a 2023 felony conviction for Assault 3 – Cause Fear of Injury W/Weapon. The CHS has requested a recommendation letter from law enforcement to help aid in their application for Legal Permeant Resident status. No promises have been made by law enforcement to the CHS. The CHS is cooperating with law enforcement for deferred action to their

immigration status. The CHS is subject to removal from the United States and remains within the country pursuant to a deferred action agreement.

## CONCLUSION

16. For the reasons described above, based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that JEFERSON GERMAN MEDINA has committed the offenses described in the attached complaint. Accordingly, I ask the Court to issue the complaint and a warrant for JEFERSON GERMAN MEDINA's arrest in accordance with Federal Rule of Criminal Procedure 4(a).

RESPECTFULLY SUBMITTED,

PHILLIP YORK
Digitally signed by PHILLIP YORK
Date: 2025.11.13 11:10:11 -09'00'

Phillip York
Special Agent
Federal Bureau of Investigation

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 on _____.

_____
HON. KYLE F. REARDON
Chief U.S. Magistrate Judge
DISTRICT OF ALASKA
November 13, 2025

*Affidavit in Support of Criminal Complaint*
3:25-mj-00731-KFR  Page 11 of 11
Case 3:25-mj-00731-KFR   Document 2   Filed 11/13/25   Page 11 of 11